UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Faysal N.,[1] | File No. 25-CV-04641 (JMB/DLM) |
| Petitioner, | |
| v. | |
| Kristi Noem, *Secretary, U.S. Department of Homeland Security, in her official capacity*; Pamela Bondi, *Attorney General of the United States, in her official capacity*; Todd M. Lyons, *Acting Director, Immigration and Customs Enforcement, in his official capacity*; Peter Berg, *Field Office Director of Enforcement and Removal Operations, St. Paul Field Office, Immigration and Customs Enforcement, in his official capacity*; and Eric Tollefson, *Kandiyohi County Sheriff, in his official capacity*; | **ORDER** |
| Respondents. | |

---

John Ogden Arnold, Robichaud, Schroepfer & Correia, P.A., Golden Valley, MN, for Petitioner.

Ana H. Voss and Liles H. Repp, United States Attorney's Office, Minneapolis, MN, for Respondents Pamela Bondi, Kristi Noem, Todd M. Lyons, and David Easterwood.

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

This matter is before the Court on Petitioner Faysal N.'s Amended Petition for a Writ of Habeas Corpus (Petition) (Doc. No. 7 [hereinafter, "Pet."]). For the reasons explained below, the Court grants the Petition.[2]

## BACKGROUND

Faysal N. is a citizen of Somalia who entered the United States in 2009 and has resided in the United States ever since without any criminal history aside from a "minor traffic offense from 2016, Driving After Cancellation." (Pet. ¶¶ 1, 9, 32.)

On April 7, 2010, an immigration judge ordered Faysal N. removed from the United States and granted withholding of removal to Somalia. (Doc. No. 13 ¶ 7 [hereinafter, "Robinson Decl."].) Faysal N. later moved to reopen his case. After it was reopened, a second immigration judge ordered him removed and again granted withholding of removal to Somalia on March 3, 2011. (*Id.* ¶¶ 8–10; *see also* Doc. No. 14-1.)

On March 4, 2011, ICE released Faysal N. from custody on an order of supervision. (Robinson Decl. ¶ 11; *see also* Pet. ¶ 24; Doc. No. 8 at 15–17.) The March 4, 2011 Order of Supervision explained that "[b]ecause [ICE] has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large under" a number of conditions, including reporting monthly to ICE starting in April 2011, assisting ICE in obtaining any necessary travel

---

[2] The Petition names Peter Berg as Field Office Director of Enforcement and Removal Operations, St. Paul Field Office, U.S. Immigration and Customs Enforcement (ICE). (Pet. at 1.) Pursuant to Federal Rule of Civil Procedure 25(d), David Easterwood, Berg's successor as Acting Director for the St. Paul Field Office of ICE, is automatically substituted as a party. (*See* Doc. No. 12 at 1 n.1.)

2

documents, submitting copies of his applications for travel documents and providing proof of receipt to ICE by April 10, 2011, and a number of other specified conditions. (Doc. No. 8 at 15–17.)

Faysal N. contends that he has complied with all conditions of his Order of Supervision, including required check-ins with ICE, and "has not been accused of violating any supervised condition or committing any new crime." (Doc. No. 15 ¶ 5.) Respondents point to no evidence in the record to show that Faysal N. has violated any conditions of his supervised release. (Doc. No. 12 at 11.) Indeed, Respondents do not assert Faysal L. even missed so much as a check-in appointment during the fifteen years of supervision. (*Id.*)

On December 15, 2025, Homeland Security Investigations "encountered" Faysal N. during "Operation Metro Surge," determined that he "has a final order of removal from an immigration judge and is subject to removal from the United States," and took him into custody. (Robinson Decl. ¶ 12; *see also* Pet. ¶ 25.) Faysal N. was taken to the Fort Snelling facility for processing that day. (Robinson Decl. ¶ 12.)

That same day, ICE revoked Faysal N.'s supervised release. (*Id.* ¶ 13.) ICE provided him a Notice of Revocation of Release that stated as follows:

> This letter is to inform you that your case has been reviewed and it has been determined that you will be kept in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your file and/or your personal interview on account of changed circumstances in your case. ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case.
>
> . . . On March 4, 2011, ICE officials released you from custody on an Order of Supervision, Form I-220B. Since being

3

> released, removal from the U.S. is now significantly likely in the reasonably foreseeable future. Based on changed circumstances in your case you will be brought back into ICE custody.
>
> Based on the above, and pursuant to 8 CFR 241.4, you are to remain in ICE custody at this time. . . .

(Doc. No. 14-2 at 1.) Also on December 15, ICE conducted an informal interview of Faysal N. pursuant to "8 C.F.R. § 241.4(l); 8 C.F.R. § 241.13(i)," during which, according to the written record of the interview, Faysal N. took the position that ICE "can't remove him." (*Id.* at 3.) After a location transfer from Fort Snelling, Minnesota, Faysal N. has been and detained at the Kandiyohi County Jail. (Pet. ¶¶ 25–27; Robinson Decl. ¶ 15.)

As of December 23, 2025, "ICE Headquarters and Removal Operations is actively working with Department of State [sic] and the Department of Homeland Security on third country removal logistics for [Faysal N.]." (Robinson Decl. ¶ 16.) Respondents do not provide any detail about their efforts or progress beyond this general statement.

The same day he was taken into custody, Faysal N. filed a petition for writ of habeas corpus. (Doc. No. 1.) In response to an Order to Show Cause (Doc. No. 10), Faysal N. filed the amended Petition (Doc. No. 7). Respondents timely filed a response to the Petition and submitted declarations of William J. Robinson and Friedrich A. P. Siekert with two exhibits, a copy of the March 3, 2011 Final Order of Removal and a December 15, 2025 Notice of Revocation of Release with notes from an informal interview. (Doc. Nos. 12–14.) Faysal N. timely filed a reply. (Doc. No. 15.)

4

## DISCUSSION

Faysal N. seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The Petition requests that the Court declare that his current detention is unlawful and order Respondents to release him from custody. (Pet. at 13.)

As a threshold matter, the Court notes that a writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)); *Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 702 (D. Minn. 2025). For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (quotation omitted). The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted). The petitioner bears the burden of proving that his detention is illegal by a preponderance of evidence. *Jose J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), 2025 WL 2466670, at *5 (D. Minn. Aug. 27, 2025) (citing *Aditya W.H.*, 782 F. Supp. 3d at 703).

In addition, the Court concludes that it has jurisdiction to hear this Petition. Under section 2241, federal courts have jurisdiction to order the release of a prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. More specifically, federal courts have jurisdiction to decide section 2241 petitions

for habeas corpus filed by persons who remain detained after a deportation order has become final. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). Because Faysal N. does not challenge the removal order but instead challenges the revocation of his supervised release and his continued detention, the Court has jurisdiction to decide the questions raised about the lawfulness of Faysal N.'s current re-detention.

I.   **REQUEST FOR TEMPORARY RESTRAINING ORDER**

The Petition requests a "temporary order prohibiting the Respondents from transferring Petitioner from the district without the court's approval." (Pet. at 13.) Observing that request, the Court on December 19, 2025, ordered that if Faysal N. intended to "file a motion for a temporary restraining order or other expedited motion seeking such relief, Petitioner must file the motion by no later than December 22, 2025." (Doc. No. 11.) Faysal N. did not file any such motion. The Court therefore declines to grant the requested temporary order.

II.   **REQUEST FOR RELEASE**

Faysal N. asserts that his detention is unlawful and that he should be immediately released because Respondents, having previously released him on an Order of Supervision, violated applicable regulations by "failing to provide adequate notice that his Order of Supervision was revoked, with an individualized justification, and by failing to sufficiently demonstrate changed circumstances that render his removal significantly likely in the reasonably foreseeable future." (Pet. ¶ 16; *see also id.* ¶¶ 6–9 (citing 8 C.F.R. § 241.13(i)(2)).) Given the limited response from Respondents concerning changed

6

circumstances and compliance with the requisite procedures at section 241.13, the Court agrees with Faysal N. and grants the Petition on this basis.[3]

Specific regulations control the federal government's ability to detain, release, and revoke the release of noncitizens subject to orders of removal.[4] Government agencies are required to follow their own regulations. *See United States ex rel. Accordi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Sarail A. v. Bondi*, No. 25-CV-2144 (ECT/JFD), 2025 WL 2533673, at *2 (D. Minn. Sep. 3, 2025). The parties disagree on which regulation applies to Faysal N.'s detention: 8 C.F.R. § 241.4 or § 241.13. Section 241.13 would apply if ICE has previously determined that there is no significant likelihood that the noncitizen will be removed in the reasonably foreseeable future, provided that no special circumstances justify continued detention. *Id.* § 241.13(g). When an individual is released pursuant to section 241.13, that release can be revoked on two grounds: violation of supervised release or changed circumstances. 8 C.F.R. § 241.13(i). Under the latter, ICE "may revoke [a noncitizen's] release under this section and return the [noncitizen] to custody if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). In either case—violation of supervised release or changed circumstances—the regulations

---

[3] Faysal N. also asserts that his re-detention violated the Administrative Procedure Act and the due process clause of the Fifth Amendment. (Pet. ¶¶ 17–27.) Because the Court finds that ICE has violated its own regulations in re-detaining Faysal N., such that his current detention is unlawful, the Court does not reach these alternative arguments.

[4] The Court uses the term "noncitizen" instead of the term "alien."

require ICE to notify the noncitizen "of the reasons for revocation of his or her release" and to conduct an initial informal interview promptly after the noncitizen's return to custody to afford the noncitizen an opportunity to respond to the reasons for revocation stated in the notification. *Id.* § 241.13(i)(3). Section 241.13 also places the burden on ICE to establish that "changed circumstances" justified the revocation of release. *Roble v. Bondi*, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025); *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); *Nguyen v. Hyde*, No. 25-CV-11470-MJJ, 2025 WL 1725791, at *3 n.2 (D. Mass. June 20, 2025).

### A.     Applicability of Section 241.13

The Court is compelled to conclude that section 241.13 applies in this case for three reasons. First, the 2011 Order of Supervision notes that ICE "ha[d] not effected [his] deportation or removal during the period prescribed by law . . . ." (Doc. No. 8 at 15.) Respondent's argument fails to explain what "the period proscribed by law" refers to or explain how this language can have any meaning apart from being a conclusion concerning the likelihood of removal in the period prescribed by law. The Court cannot disregard or ignore this determination or the clear implications that it has for whether section 241.13 applies.

Second, in at least one other case before this Court, Respondents took the position that such language in orders of supervision constitute a determination that there was no significant likelihood that the noncitizen would be removed in the reasonably foreseeable

8

future.⁵ *See Yee S. v. Bondi*, No. 25-CV-02782 (JMB/DLM), Doc. Nos. 7 at 3 (conceding the point in briefing), 8-7 (Order of Supervision). Respondents make no attempt to distinguish their recent position or otherwise explain their irreconcilably inconsistent legal positions.

Finally, Respondents' own Notice of Revocation of Release in this case includes language that is consistent with the existence of a previous determination that Faysal N. was not likely to be removed in the reasonably foreseeable future. For instance, the Notice of Revocation of Release that Respondents served on Faysal N. after re-detaining him asserted that there were "changed circumstances in your case," namely that "ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case." (Doc. No. 14-2 at 1.) The notice said it not once but twice: "Since being released, removal from the U.S. is now significantly likely in the reasonably foreseeable future. Based on changed circumstances in your case you will be brought back into ICE custody." (*Id.*) Respondents' litigation posture thus conflicts with their own contemporaneous statements to Petitioner. Therefore, the Court concludes that Faysal N.'s re-detention was subject to the requirements of section 241.13(i).

**B.     Compliance with the Requirements of Section 241.13**

---

⁵ Respondents direct the Court to no case, and the Court is aware of none, that interprets "reasonably foreseeable future" to include delays of fifteen years, as in this case.

The parties also dispute whether Respondents complied with the requirements of section 241.13(i).  Again, the Court agrees with Petitioner and concludes that Respondents have not met their burden under this section.[6]

The Notice of Revocation of Release does not identify any "changed circumstances" or provide any explanation to support the conclusion that Faysal N. is significantly likely to be removed in the reasonably foreseeable future.  In this notice, ICE claims summarily that the agency had made a "determination that there are changed circumstances in your case," but it includes no factual statements or explanation.  (Doc. No. 14-2 at 1.)  ICE also summarily declares that "removal from the U.S. is now significantly likely in the reasonably foreseeable future."  (*Id.*)  The notice, however, provides no information about what steps, if any, ICE or other agencies have taken, or about what specific "determination" has been made, by whom, and on what basis.  Absent more, this generic, conclusory language falls short of what is required by section 241.13.

In addition, Respondents' written submissions to this Court also fail to identify any "changed circumstances" to support a conclusion that there is now a significant likelihood

---

[6] To the extent that portions of Respondents' written submissions suggest that Faysal N. violated the terms of his supervised release (*see* Doc. No. 12 at 11 (suggesting that Faysal N. "covertly" violated the terms of his supervised release)), the Court rejects this suggestion.  The terms of supervised release included monthly check-ins and submitting certain documentation by April 2011 (Doc. No. 8 at 15–17), yet Respondents point to nothing in the record to show that Faysal N. ever even missed a check-in over these many years or failed to submit documentation due 15 years ago.  Moreover, the Notice of Revocation of Release made no mention of any violation.  The record presented cannot support any finding that an overt or covert violation occurred during the lengthy period of supervision.  To the contrary, Faysal N. appears to have been a model of compliance during that time.

10

of Petitioner's removal in the reasonably foreseeable future, as section 241.13(i)(2) requires. Respondents' sole explanation of changed circumstances is that "ICE Headquarters and Removal Operations is actively working with Department of State [sic] and the Department of Homeland Security on third country removal logistics for" Faysal N. (Robinson Decl. ¶ 16.) This conclusory statement lacks any detail and does not purport to say what steps the agencies have taken, when they took those steps, to which country or countries they are trying to remove Faysal N., or any progress that has been made in this process. The record here, contains fewer specifics than the record that the Court recently concluded was lacking in *Yee S.*, 2025 WL 2879479, at *4–5. *See also Sarail A.*, 2025 WL 2533673, at *3, *6 (finding that a notice that cited only "changed circumstances" without any explanation failed to comply with ICE's regulations); *Roble*, 2025 WL 2443453, at *3 (similar). Indeed, the lack of information provided by Respondents is highlighted by the fact that Respondents rely on Faysal N.'s own vague statement that he "overheard ICE officers discussing possibly removing him to a 3rd country (not Somalia)" and public information that the "Trump administration has removed several 3rd country nationals to El Salvador, South Sudan, and Eswatini." (Doc. No. 12 at 12 (citing Pet. ¶¶ 28–30).) Neither source of information satisfies the requirement in section 241.13(i)(2) that Respondents identify changed circumstances specific to Faysal N. that have actually occurred.

Moreover, Respondents' written submissions do not establish that ICE made any reasoned determination that Faysal N. is significantly likely to be removed in the reasonably foreseeable future. To revoke a noncitizen's release under section 241.13, ICE

11

must "determine[]" that "on account of changed circumstances," there "is a significant likelihood that the [noncitizen] will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2).  To make such a reasoned determination, the agency must "consider[] factors probative of the [noncitizen's] future removal," such as the factors set out in section 241.13(f). *Sarail A.*, 2025 WL 2533673, at *7 (citing cases); *see also Kong v. United States*, 62 F.4th 608, 620 n.13 (1st Cir. 2023) (referring to the factors in subsection (f) as relevant to the subsection (i)(2) determination governing re-detention of a noncitizen released under section 241.13).  Those factors include, but are not limited to, the history of Faysal N.'s efforts to comply with the order of removal, the history of ICE's efforts to remove noncitizens to third countries that are an option for Faysal N.'s removal, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of noncitizens to the countries in question.  *See* 8 C.F.R. § 241.13(f).  Respondents do not adequately develop an argument addressing any of these factors, as they have not identified any third country where ICE purportedly expects to be able to remove Faysal N.  Indeed, nothing in the written submissions relates in particular to Faysal N. or otherwise sheds any light on why ICE reached a determination that Faysal N.'s removal was significantly likely in the reasonably foreseeable future.  Nor do the written submissions contain any explanation of what factors ICE considered in making any such determination prior to Faysal N.'s December arrest.

Accordingly, Faysal N. has shown that ICE's re-detention of him on December 15, 2025 violated the law because ICE did not comply with its own regulations under section 241.13(i)(2).[7] Petitioner must be released immediately.[8]

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Petitioner Faysal N.'s Amended Petition for a Writ of Habeas Corpus (Doc. No. 7) is GRANTED in part and DENIED in part as follows:

---

[7] The Court is also concerned that Respondents may not have complied with their obligation to notify Petitioner "[u]pon revocation" of "the reasons for revocation." 8 C.F.R. § 241.13(i)(3) (emphasis added). As noted above, ICE did not serve the Revocation Notice until *after* Petitioner was already re-detained. (Doc. No. 7 at 3–4; Rev. Notice.)

[8] Respondents also argue that 8 U.S.C. § 1231(a) mandates Faysal N.'s detention because that statutory provision sets forth a ninety-day period within which to deport noncitizens and Faysal N. had served only one day in custody—the period of time from March 3, 2011 through March 4, 2011 when he was released. Respondents argue that the ninety-day period of time was paused for fifteen years, beginning on March 4, 2011, until it was restarted on December 15, 2025, when Homeland Security Investigations "encountered" Faysal N. and arrested him. Respondents cite to no authority for this proposition. Nothing in the plain text of the statute supports the argument either. To the contrary, sections 1231(a)(1)(A) and (B) refer to this period of time as a single block ("a period of 90 days") that "begins" at a specified time and make no mention of carving up this "period of 90 days" into smaller sections or suggest that this single block of time can start and stop based on certain conditions. In addition, the statute contemplates a "suspension" of the end of the ninety days, or an extension of this removal period. *See id.* § 1231(a)(1)(C). Importantly, Respondents make no argument that this suspension occurred in this case, and the Court concludes that the plain text of the suspension provisions would be inconsistent with Respondent's view of the ninety days as a period of time that can stop indefinitely and begin again at any point in the future, whether it be fifteen days, fifteen years, or fifteen decades later. Absent any well-developed argument, the Court declines to adopt Respondent's interpretation of section 1231.

1. Respondents are ORDERED to release Petitioner Faysal N. from custody immediately, subject to and in accordance with the conditions in his preexisting Order of Supervision dated March 4, 2011.

2. On or before 11:00 a.m. CT on January 9, 2026, counsel for Respondents is ORDERED to provide a declaration pursuant to 28 U.S.C. § 1746 affirming that Petitioner was released from custody in accordance with this Order.

3. To the extent the Amended Petition seeks a "temporary order prohibiting the Respondents from transferring Petitioner from the district without the court's approval," the request is DENIED.

4. As to other forms of relief requested, Faysal N. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 6, 2026

*/s Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court